IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MONTBLANC-SIMPLO GMBH, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>MONTBLANCPENSALE.ORG, *et al.*, )<br>)<br>Defendants. )<br>) | Civil Action No. 1:13-cv-01249 |

## REPORT AND RECOMMENDATION

This matter is before the court on plaintiff's Motion for Default Judgment (no. 11) against the following eleven (11) Internet defendant domain names: Discountmontblancoutlet.com; Montblancbohemepen.com; Montblancjohnlennon.com; Montblancpensale.org; Montblancpensoutlet.org; Montblancstarwalkerpens.com; Replicamontblancmall.com; Replicamontblancpensale.com; Replicamontblancpenss.com; Replicamontblancsale.com; and Replicamontblancshop.com (collectively, the "Defendant domain names"). Plaintiff Montblanc-Simplo Gmbh ("Montblanc") filed a one-count complaint on October 8, 2013. Plaintiff's complaint alleges that defendant domain names are involved in unlawful cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA") and seeks *in rem* injunctive relief in the form of a transfer of the eleven defendant domain names into the ownership and control of Montblanc. Compl. ¶¶ 7, 30.

Defendant domain names' registrant was served notice of the claims via e-mail on August 30, 2013 and by USPS airmail pursuant to 15 U.S.C. §1125(d)(2)(A)(ii)(II)(aa) (no. 4, ex. 1 at ¶¶ 6; 9-Decl. of Martin B. Schwimmer). Additionally, pursuant to 15 U.S.C.

§1125(d)(2)(A)(ii)(II)(bb) and the Court's October 17, 2013 Order[1] (no. 6), plaintiff was required to publish notice by publishing a copy of the Order in *The Washington Times* once within fourteen (14) days of the entry of the order. Pursuant to this court order (no. 6 at pg. 2), any answer or response to the complaint was due within twenty-one (21) days from the date of publication in *The Washington Times*. Accordingly, plaintiff promptly published notice of this action in *The Washington Times* on October 21, 2013 (no. 10, ex. 1). To date, no answer or responsive pleading has been filed in response to the complaint and the time to do so has expired. The Clerk entered default against the eleven domain names on November 20, 2013 (no. 10). Upon consideration of plaintiff's motion and the memorandum in support thereof, the magistrate judge makes findings as follows and recommends that default judgment be entered in plaintiff's favor against the eleven defendant domain names.

## Jurisdiction and Venue

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this case arises under federal law, the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"). Plaintiff has standing because it is the owner of the federally registered trademarks at issue. Pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii)(II), there is *in rem* jurisdiction over the defendant domain names as the defendant domain names violate plaintiff's registered marks, and plaintiff cannot obtain *in personam* jurisdiction over the defendant domain names' registrant. Plaintiff through due diligence has not been able to find the registrant or any potential defendant in this civil action and has sent sufficient notice of this suit by publication in *The Washington Times*, e-mail, and postal mail.[2] Also, *in rem* jurisdiction is proper under 15 U.S.C. §

---

[1] On October 15, 2013, plaintiff filed a Motion for Order Authorizing Service of Process by E-mail, or in the Alternative By Publication which was granted by the court on October 17, 2013 (no. 6).
[2] *See* nos. 6 and 7. The identified registrant of the defendant domain names is "Karen Millen" and the registrant's address according to the WHOIS information is Putian City, China. Compl. ¶ 3; ex. 1. Upon information and

1125(d)(2)(C)(i) because the registries for the defendant domain names, VeriSign Inc. and the Public Interest Registry, are located in this judicial district.[3] Compl. ¶ 13.

Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and 15 U.S.C. § 1125(d)(2)(A) and (C) because the domain name registries for defendant domain names are located in this district. Compl. ¶ 12.

## Fact Summary

The internet defendant domain names have incorporated Montblanc's trademarks without plaintiff's permission and the entities behind the domain names have offered for sale counterfeit Montblanc products online. Compl. ¶¶ 22-24. Montblanc is a German company that has specialized in luxury, high quality writing instruments since 1906.[4] Compl. ¶¶ 1, 15. The company name "Mont Blanc" translates to "white mountain" in English. MONTBLANC® carries a famous product line of luxury items including writing accessories, watches, leather goods, jewelry, and eyewear. Compl. ¶ 15. In addition to having store locations, Montblanc operates an Internet website located at http:///www.Montblanc.com, where it sells its merchandise. Compl. ¶ 16. Montblanc has expended significant resources in developing and advertising its luxury brand which has contributed to its marks being globally recognized as a symbol of high quality luxury goods. *Id.* at ¶18. Montblanc's long-standing history, reputation, and commercial success of the MONTBLANC® brand have resulted in the MONTBLANC® marks being famous, distinguishable and lucrative. Compl. ¶ 20. For example, in 2010, the

---

belief, "Karen Millen" is a false alias. "Karen Millen" is the name of a well-known United Kingdom designer whose name functions as the trademark for her business. *Id.* at 4. Plaintiff contacted a representative of the Karen Millen Group who confirmed that the Karen Millen Group had no knowledge about defendant domain names and no control over them. Compl. ¶ 5.

[3] VeriSign Inc. is located in Dulles, Virginia and Public Interest Registry is located in Reston, Virginia.

[4] Plaintiff is a corporation duly organized and existing under the laws of Germany. Compl. ¶ 1. Plaintiff's address is Hellgrundweg 100, Hamburg, Germany 22525. *Id.*

MONTBLANC® brand generated approximately $780,000,000 USD in total sales revenue worldwide.  Compl. ¶ 19.

The MONTBLANC® word mark has been registered with the United States Patent and Trademark Office ("USPTO") since September 1, 1964 (Reg. No. 776,208) for class 16 goods which include fountain pens, ball point pens, and mechanical pencils.  Compl. ¶ 17.  Originally, Montblanc registered the MONTBLANC® word mark on September 1, 1964 pursuant to 15 U.S.C. § 150. *Id.*  Montblanc subsequently registered the MONTBLANC® word marks: (i) on March 8, 1994, Registration No. 1,825,001 in class 9; (ii) on March 21, 1995, Registration No. 1,884,842 in classes 14 and 18; (iii) on November 10, 1998, Registration No. 2,202,465 in class 3; (iv) on October 3, 2000, Registration No. 2,415,189 in class 25; and (v) on March 9, 2004, Registration No. 2,820,561 in class 37.   These represent some of Montblanc's registered word marks that incorporate the name "MONTBLANC." *Id.*  In addition, plaintiff has registered several stylized design marks with the USPTO  for use in connection with its MONTBLANC® branded products and services including the composite MONTBLANC and "Star  Design"® mark in class 16 registered on December 4, 2001. Several of Montblanc's marks have obtained incontestable status pursuant to 15 U.S.C. § 1065.[5]   Compl. ¶ 17.

MONTBLANC® marks[6] have been used to distinguish the origin of the Montblanc's goods. *Id.* at ¶ 20.  Plaintiff uses the MONTBLANC® marks in its domain name, on its website to advertise authentic MONTBLANC® brand products and in its product packaging to indicate the source of its luxury products.  Compl. ¶ 18. Currently, the MONTBLANC® marks are in full force and effect.  Compl. ¶ 21.

The defendant domain names are owned and operated by an unknown group of

---

[5] Subsequently, on February 21, 2006, Montblanc registered the composite MONTBLANC and "Star  Design"® mark, Registration No. 3,059,776 in classes 6, 8, 9, 21, 25, and 34.  Compl. ¶ 18.
[6] Compl. Ex. 2 is a copy of a representative sample of U.S. Trademark registrations owned by Montblanc.

4

interrelated entities ("entities") involved in a large-scale conspiracy to manufacture, distribute and market counterfeit MONTBLANC® products to online consumers around the world, including the United States. Compl. ¶ 27. All of the Internet defendant domain names contain the MONTBLANC® word mark. A number of the defendant domain names combine the word MONTBLANC with the word "pen" which is Montblanc's staple product. In addition, some of the defendant domain names contain names like Boheme, John Lennon and Star Walker which refer to specific models of pens sold by Montblanc. Compl. ¶ 22. On the websites of many of the defendant domain names the MONTBLANC® word mark and/or composite MONTBLANC and the "Star Design"® marks are prominently displayed on their home pages. Compl. ¶ 24. The entities running the internet domain names have sold counterfeit merchandise of inferior quality bearing the MONTBLANC® marks. These entities are not affiliated with Montblanc and they have misappropriated Montblanc's marks without authorization from plaintiff. *Id.* at ¶ 23.

Based upon information and belief, the defendant domain names' registrant, Karen Millen, is a false alias. Compl. ¶ 26. Peculiarly, all the defendant domain names all share the same registrant Karen Millen whose registered address is in China. Also the domain names share the same common registrar, GoDaddy.com. Compl. ¶ 27. Montblanc has vigorously attempted to protect its famous brand and its customers from counterfeit Montblanc products. Montblanc has sent infringement notices and cease-and-desist letters to the contact information provided by the domain name registrar and listed on the domain names' websites but Montblanc has not received any response. Compl. ¶ 29. To date, neither the registrant nor any other potential interested party has responded to this lawsuit.

## Standard

Default judgment is appropriate if the well-pled allegations of the complaint establish plaintiff's entitlement to relief, and defendant has failed to plead or defend within the time frames contained in the rules. *Music City Music v. Alfa Foods, Ltd.,* 616 F. Supp.1001, 1002 (E.D. Va. 1985); Fed. R. Civ. P. 55. By defaulting, a defendant admits plaintiff's well-pled allegations of fact, which then provide the basis for judgment. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)). *See also DIRECTV, Inc. v. Rawlins*, 523 F.3d 318, 322 n.2 (4th Cir. 2008) (citing *Ryan*); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (default has the effect of admitting factual allegations in complaint); *Marion County Court v. Ridge*, 13 F.2d 969, 971 (4th Cir. 1926) (default admits well-pled facts). Because defendants in this action have all defaulted, the facts set forth in plaintiff's complaint are deemed admitted.

## Discussion and Findings

The magistrate judge finds that the well-pled facts in plaintiff's complaint establish that defendant domain names were unlawfully involved in cybersquatting in violation of the Anti-Cybersquatting Consumer Protection Act 15 U.S.C. § 1125(d)(1)(A). Accordingly, the magistrate judge finds that plaintiff is entitled to the sole relief requested, the transfer of defendant domain names to plaintiff.

Under the ACPA, a person alleged to be a cybersquatter is liable to the owner of a protected mark if that person: "(i) has a bad faith intent to profit from that mark . . . ; and (ii) registers, traffics in, or uses a domain name that -- (I) in the case of a mark that is distinctive ..., is identical or confusingly similar to that mark; (II) in the case of a famous mark ..., is identical

or confusingly similar to or dilutive of that mark…(III) is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36." 15 U.S.C. § 1125(d)(1)(A). *See Virtual Works, Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264 (4th Cir. 2001).

In assessing the first factor, 15 U.S.C. § 1125(d)(1)(B)(i) provides a non-exhaustive list of nine factors to be considered when determining the existence of a "bad faith intent to profit." *See Venetian Casino Resort, LLC v. Venetiangold.Com*, 380 F. Supp. 2d 737, 740 (E.D. Va. 2005). Some of these factors include, but are not limited to:

> (1) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (2) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (3) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
>
> (4) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
>
> (5) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
>
> (6) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of [15 U.S.C. § 1125(c)].

15 U.S.C. § 1125(d)(1)(B)(i).

In applying the two prong test to the facts presented, the magistrate judge finds that defendant domain names violate the ACPA. First, the magistrate judge finds that the well-pled facts of the complaint establish that the registrant registered defendant domain names with bad faith intent to profit. Several of the "bad faith" factors are present here. The entities behind the defendant domain names have indeed profited from plaintiff's marks and reputation by selling counterfeit Montblanc merchandise. Defendants have taken advantage of Montblanc's goodwill by incorporating Montblanc's marks into their domain names and websites as part of a tactical effort to divert consumers away from Montblanc's legitimate website and to the infringing websites. The registrant does not have any trademark or other intellectual property rights in plaintiff Montblanc's marks. Neither has Montblanc given the registrant permission to use plaintiff's marks in defendant domain names or sell items bearing the Montblanc mark.

All defendant domain names contain the MONTBLANC® mark and are confusingly similar to Montblanc's legitimate use of the mark on its official website. Many of defendant domain names combine the word Montblanc with other words like "pen" which is Montblanc's staple product and popular names of model pens sold by Montblanc including John Lennon and Star Walker which further creates a likelihood of confusion that there is an affiliation between plaintiff and defendant domain names when none exists.

Additionally, defendant domain name websites also create consumer confusion as to the source of their counterfeit goods by prominently displaying Montblanc marks, including its word mark and composite MONTBLANC and "Star Design" mark on their web pages. The registrant is not using the defendant domain names to display a site that uses plaintiff's marks in a bona fide noncommercial or fair use manner but is clearly using the sites for a commercial purpose. *Cf.* Lamparello v. Falwell, 420 F.3d 309, 320 (4th Cir. 2005) (use of a domain name for criticism

constitutes a bona fide noncommercial or fair use under the ACPA). Because the entities behind the defendant domain names are selling similar Montblanc merchandise, defendants are directly competing with plaintiff's business for commercial gain. Furthermore, defendant domain names involvement in the selling of counterfeit Montblanc products which are of inferior quality tarnishes plaintiff's goodwill and dilutes plaintiff's famous brand.

Furthermore, the circumstances surrounding the registration of defendant domain names also weigh in favor of a finding of "bad faith." The fact that that the same registrant has warehoused multiple domain names, eleven in total, all with the word Montblanc strongly signals bad faith. Moreover, the plaintiff has pled sufficient facts for a finding that the entities behind defendant domain names have intentionally avoided identification. For example, the registrant "Karen Millen", the name of a well-known United Kingdom designer, is apparently a false alias and has provided misleading contact information in connection with the registration of defendant domain names like the contact e-mail, 21313783@qq.com. Plaintiff has unsuccessfully attempted to contact the registrant multiple times using the contact information provided by the website and registration.

For these reasons, the magistrate judge finds that the registrant and entities operating the defendant domain names have indeed acted with a bad faith intent to profit from Montblanc's reputation and brand recognition without Montblanc's authorization.

Second, the magistrate judge finds that plaintiff Montblanc's marks incorporated in defendant domain names were and are famous and distinctive within the meaning of 15 U.S.C. § 1125(c) at the time of the registration of defendant domain names. Montblanc has been selling products under the Montblanc name for over a hundred years and has been recognized by the general consuming public as a source of luxury products. Montblanc's marks are well-

established with the company registering its first marks on September 1, 1964 with the USPTO. For the past fifteen years, plaintiff has registered several other design marks for use in connection with Montblanc of which many have become incontestable trademarks pursuant to 15 U.S.C. § 1065.  As a result of plaintiff's long-standing, substantial and exclusive use of the MONTBLANC® marks, MONTBLANC® marks have become famous, distinctive and a symbol of quality luxury goods.  Montblanc marks are suggestive and inherently distinctive in that they "connote, without describing," the products provided by plaintiff, here, luxury pens, watches and leather goods.  *Venetian Casino Resort*, *LLC*, 380 F. Supp. 2d at 741-42.  Also, the word Montblanc which means a "white horse" is a fanciful and arbitrary word as it does not describe any particular characteristic of the company's goods.  *Id.*

The magistrate judge also finds that defendant domain names are confusingly similar and identical to Montblanc's marks.  All of defendant domain names incorporate the word Montblanc and only add generic words like "pen" and popular Montblanc product names which are inextricably connected to Montblanc's brand.  Furthermore, on some of the web pages by defendant domain names and their counterfeit products, the Montblanc word mark and Star Design" marks are prominently displayed.  This creates a significant likelihood of confusion regarding a potential association or endorsement between defendant domain names and plaintiff's company.

Based on the foregoing, the magistrate judge accordingly finds that the requisite standards under the ACPA are satisfied and defendant domain names are cybersquatting in violation of the ACPA.  As a remedy for a violation of the ACPA in an *in rem* action, 15 U.S.C. § 1124(d)(2)(D)(i) provides for either a court order (1) for the forfeiture or cancellation of the domain names;  or (2) the transfer of the domain name to the owner of the mark.  *See*

10

*Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610 (E.D.Va. 2003) (discussing a court's power to transfer or cancel a domain when the location of the registry is within that judicial district). Since the defendant domain names' registries are located within this judicial district and plaintiff has properly perfected service as required by the ACPA and October 17, 2013 Court order, the magistrate judge finds that plaintiff is entitled to the transfer of the defendant domain names into the exclusive ownership and control of Montblanc.

## Recommendation

The magistrate judge recommends that default judgment be entered against defendant domain names in favor of plaintiff Montblanc, and that ownership and control of defendant domain names be transferred to plaintiff.

## Notice

By means of the court's electronic filing system, the parties are notified as follows. Objections to this report and recommendation must be filed within fourteen (14) days of service on you of this report and recommendation. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.

/s/
Thomas Rawles Jones, Jr.
United States Magistrate Judge

December 26, 2013
Alexandria, Virginia